## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LANEY LINTON, CHLOE OLIVER, ROSEMARY ROCKEY, THOMAS ANDRACCHI II, on behalf of themselves and all others similarly situated, | Civil Action No._____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BYHEART, INC. | |
| Defendant. | |

Plaintiffs Laney Linton, Chloe Oliver, Rosemary Rockey, and Thomas Andracchi II ("Plaintiffs") individually and on behalf of themselves and all others similarly situated, brings this class action lawsuit against Defendant ByHeart Inc., ("Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

### NATURE OF THE ACTION

1.      On November 11, 2025, the United States Food and Drug Administration ("FDA"), in coordination with the Centers for Disease Control and Prevention ("CDC"), reported that Defendant's Whole Nutrition Infant Formula cans and Anywhere Packs (the "Affected Products") are potentially "contaminated with Clostridium botulinum, which is causing infant illness in multiple regions of the country", following multiple infant hospitalizations linked to consumption of the Affected Products.[1]

---

[1] *Outbreak Investigation of Infant Botulism: Infant Formula (November 2025)*, FDA (Nov. 11, 2025) https://www.fda.gov/food/outbreaks-foodborne-illness/outbreak-investigation-infant-botulism-infant-formula-november-2025 ) (last visited Nov. 17, 2025).

2.      The Food and Drug Administration ("FDA") and the Centers for Disease Control and Prevention ("CDC") have identified Clostridium botulinum as a dangerous pathogen that can cause infant botulism, a rare but potentially fatal illness.[2] Even small amounts of the botulinum toxin can result in severe and progressive symptoms in infants, including constipation, poor feeding, loss of head control, difficulty swallowing, respiratory failure, and, in extreme cases, death.[3]

3.      Baby food manufacturers hold a special position of public trust. Consumers believe that they would not sell products that are unsafe for babies to consume.

4.      Defendant does not disclose the presence or risk of Clostridium botulinum in the Affected Products on its labels or in its marketing materials.

5.      Defendant also failed to warn consumers that the Affected Products may contain Clostridium botulinum.

6.      Defendant markets, advertises, represents, and warrants that the baby food products it manufactures, distributes, and sells are safe and suitable for consumption by babies.

7.      An example of Defendant's lack of disclosure on the Affected Products is depicted below:

---

[2] *Id.*
[3] *Id.*



8.      As alleged herein, Defendant's marketing and advertising of the Affected Products are false, deceptive, and misleading to reasonable consumers because Defendant knows that Clostridium botulinum is harmful to babies, yet they sold the Affected Products nonetheless. Defendant's marketing and advertising of the Affected Products are also false, deceptive, and misleading to reasonable consumers because the Defendant failed to warn and disclose material facts regarding the Affected Products, namely, that they were unsafe and unsuitable for babies; that they contained Clostridium botulinum; the levels of the Clostridium botulinum; that preliminary laboratory testing conducted by the California Department of Public Health ("CDPH") detected the presence of Clostridium botulinum bacteria in an open can of the Affected Product linked to an infant botulism case; and that despite ongoing federal and state investigations indicating a potential contamination risk, Defendant continued to distribute and sell the Affected Products until the FDA requested a nationwide recall on November 11, 2025.[4]

9.      The Defendant's own recall[5] and subsequent testing revealed and confirmed that the Plaintiffs' product was potentially contaminated with Clostridium botulinum.

---

[4] *Id.*
[5] *Important Voluntary Recall Information,* BYHEART, INC. (November 11, 2025) https://byheart.com/pages/an-update-from-our-founders-on-our-voluntary-recall-november-2025 (last visited Nov.17, 2025).

10.     No reasonable consumer seeing Defendant's marketing and packaging would expect Defendant's Affected Products to contain Clostridium botulinum. Reasonable consumers, like Plaintiffs, would consider the inclusion of Clostridium botulinum or other toxins or contaminants a material fact when considering what baby food to purchase.

11.     The Defendant's manufacture, distribution, and sale of the Affected Products were unlawful, unfair, false, and misleading, and the Defendant was unjustly enriched at the expense of Plaintiffs and members of the proposed Classes, as defined below.

## PARTIES

12.     Plaintiff Laney Linton is a resident and citizen of Fresno, California. On or about October 23, 2025, Plaintiff Linton purchased Defendant's Affected Products from Walmart for $37.78. Plaintiff fed Defendant's Affected Products to her two-month-old daughter, who consumed approximately two bottles per day while Plaintiff was also breastfeeding. Following consumption of Defendant's Affected Products, the infant experienced constipation. After learning of the FDA's investigation and recall of the Affected Products for potential Clostridium botulinum contamination, Plaintiff experienced significant anxiety and distress regarding the possibility of harm to her child's health. If Plaintiff Linton had known that Defendant's Affected Products were unsafe and unsuitable for infants and that testing and public health investigations had linked the Affected Products to cases of infant botulism, she would not have purchased them from Defendant.

13.     Plaintiff Chloe Oliver is a resident and citizen of Langhorne, Pennsylvania. Beginning in or around September 2025, Plaintiff Oliver purchased the Affected Products from Target, Walmart, and through online retailers, spending approximately $500–$600 on a total of eight to nine cans of the Affected Products. Plaintiff's infant son, then approximately eight weeks old, began consuming the formula on or about September 22, 2025, and continued until November 2025, when Plaintiff learned of the nationwide recall. Plaintiff experienced significant emotional

distress, anxiety, and fear for her child's well-being upon learning of the contamination risk. Out of an abundance of caution, Plaintiff discarded not only the remaining formula but also her Baby Brezza device valued at approximately $300, as well as bottles and pacifiers, to prevent possible cross-contamination. Had Plaintiff Oliver known that the Affected Products were potentially contaminated with Clostridium botulinum and unsafe for infant consumption, she would not have purchased the Affected Products.

14.     Plaintiff Rosemary Rockey is a resident and citizen of Rancho Mission Viejo, California. Plaintiff began purchasing the Affected Products in or around August 2025, paying approximately $37 per unit and purchasing the Affected Products about twenty-four times between August and November 2025. Plaintiff purchased the Affected Products through Amazon. Plaintiff's infant daughter, exclusively formula-fed for three weeks, consumed the Affected Product until the nationwide recall announcement on November 11, 2025. Following consumption, Plaintiff observed that her child experienced constipation and feverish symptoms. Upon learning of the recall, Plaintiff suffered extreme anxiety and emotional distress, reporting that she became hypervigilant and fearful that her child might develop symptoms of infant botulism, which disrupted her day-to-day life. If Plaintiff Rockey had known that the Affected Products were unsafe and linked to potential Clostridium botulinum contamination, she would not have purchased them.

15.     Plaintiff Thomas Andracchi II is a resident and citizen of Supply, North Carolina. Between approximately August and October 2025, Plaintiff Andracchi purchased the Affected Product from Amazon on at least ten occasions, paying between $40 and $45 per unit depending on shipping and taxes. Plaintiff's seven-month-old son consumed the formula over a three-month period and experienced symptoms of stomach upset and constipation during that time. Plaintiff and his spouse suffered emotional distress, anxiety, and financial losses, as they were forced to discard the remaining formula and purchase replacement infant nutrition products. If Plaintiff

Andracchi had known that the Affected Product was at risk of Clostridium botulinum contamination and unsafe for infant consumption, he would not have purchased the product.

16.    Defendant ByHeart Inc.'s principal office is 131 Varick Street, 11th Floor, New York, New York, 10013, with its registered agent, Corporation Service Co., at 251 Little Falls Drive, Wilmington, Delaware, 19808. Defendant sells infant nutrition products under the brand name "ByHeart." Defendant manufactures and markets the Affected Products intended for infants from birth up to 12 months of age, available in both powdered formula cans and single-serve "anywhere" sticks. At all relevant times, Defendant has conducted business and derived substantial revenue from its manufacturing, advertising, distributing, selling, and marketing of the Affected Products within this judicial District.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from at least one Defendant.

18.    This Court has personal jurisdiction over Defendant because Defendant is headquartered in the state of New York, regularly conducts business in this District, and has extensive contacts with this forum.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in New York, and Defendant transacts substantial business in this District.

## FACTUAL ALLEGATIONS

### I.    Defendant's Marketing Falsely Claims That The Affected Products Are Safe And Omits All Material Information About The Presence Of Clostridium Botulinum

20.    Despite the disturbing findings that Defendant's Affected Products contain Clostridium botulinum, which can cause significant harm to babies and children, Defendant continues to advertise and warrant that the Affected Products are healthy, safe, and suitable for consumption by babies.

21.    For example, Defendant touts itself as a company that cares about the health of babies and kids and the foods they eat. On its website, at www.byheart.com, Defendant represents that "We built quality systems and supplier approval requirements from the ground up, traveled the world for like-minded ingredient and farm partners, and refined our small batch approach to ensure we knew how to retain the quality and benefit of every ingredient."[6] Defendant also states that it does not compromise on nutrition, stating, "Our recipes focus on highest quality nutrition and most wholesome ingredients—because for baby's first formula, 'clean' alone is not enough."[7]

22.    On its official website, Defendant publicly represented that, after "five years of crying over spilled milk," it had "registered with the FDA and launched [its] Whole Nutrition Infant Formula to the blissful cries of stressed-out parents everywhere." Defendant made this statement to convey to consumers that its manufacturing processes complied with all applicable FDA regulations and that its infant formula products were tested, approved, and safe for consumption.[8]

23.    This representation was false and misleading because FDA registration does not constitute FDA approval, certification, or confirmation of a product's safety. Defendant's

---

[6] *A Story 7 Years in the Making*, BYHEART, INC. https://byheart.com/pages/our-story (last visited Nov. 17, 2025).
[7] *Id.*
[8] *Id.*

statement created a false impression that the Affected Products had been reviewed and cleared by the FDA, when in fact, the FDA does not "approve" infant formula products before sale.[9]

24.    The World Health Organization ("WHO") has condemned infant-formula manufacturers worldwide for employing manipulative and exploitative marketing tactics that prey upon the emotions and anxieties of new and expectant parents. The WHO report, released on April 28, 2022, found that formula-milk companies use highly sophisticated digital strategies—including paid social-media influencers, personalized advertisements, mobile applications, and online "baby-clubs"—to reach vulnerable parents at critical stages of pregnancy and early infancy, persuading them to trust and purchase branded formula products. Defendant engaged in the same practices, positioning its Affected Products as the cleanest, safest, and most scientifically advanced option for infants, while failing to disclose known or foreseeable risks of contamination with Clostridium botulinum, using "pervasive marketing…of breast-milk substitutes and therefore dissuading mothers from breastfeeding exclusively as recommended by WHO."[10]

25.    The WHO further concluded that such pervasive marketing campaigns deliberately exploit parents' desire to provide the best nutrition for their infants and convert that concern into commercial gain. The defendant's marketing mirrored this industry conduct, portraying its formula as a trustworthy, medically sound substitute for breast milk and leveraging emotionally driven advertising that promised "peace of mind" and "complete nutrition." In reality, Defendant's Affected Products were either contaminated or at risk of contamination with a bacterium capable of causing infant botulism—a life-threatening illness. Defendant's recall of the Affected Products

---

[9] *See Questions & Answers for Consumers Concerning Infant Formula,* FDA (Jan. 9, 2023) https://www.fda.gov/food/people-risk-foodborne-illness/questions-answers-consumers-concerning-infant-formula? (last visited Nov. 17, 2025).
[10] *WHO reveals shocking extent of exploitative formula milk marketing*, WHO (April 23, 2022 *https://www.who.int/news/item/28-04-2022-who-reveals-shocking-extent-of-exploitative-formula-milk-marketing* (last visited Nov. 17, 2025).

on November 11, 2025, therefore, underscores that its marketing assurances of purity, safety, and transparency were materially false and deceptive. The WHO's findings illustrate that Defendant's conduct was not accidental but consistent with exploitative formula-industry patterns designed to prioritize sales over infant safety.[11]

26.    Reasonable consumers, including Plaintiffs and Class Members, relied on this representation as an assurance that Defendant's Affected Products were manufactured in full compliance with FDA standards and were free from harmful contaminants such as Clostridium botulinum. In truth, Defendant's manufacturing process failed to prevent contamination, leading to the very outbreak that prompted the recall.

## II.    Documented Dangers of Clostridium Botulinum

27.    Clostridium botulinum is a spore-forming bacterium known to produce botulinum toxin, one of the most potent neurotoxins identified in humans. Under low-oxygen or anaerobic conditions, the spores of C. botulinum can germinate, multiply, and release this toxin into food products, posing an extreme hazard to human health.[12]

28.    According to the World Health Organization (WHO), Clostridium botulinum spores are commonly found in soil, dust, and aquatic environments. These spores are highly resilient and can survive ordinary pasteurization or food-processing temperatures. If infant formula or related food products become contaminated during production, storage, or packaging, the bacteria can proliferate and release toxins, especially in anaerobic environments such as sealed formula containers.[13]

---

[11] *Id.*

[12] *See Botulism,* WHO (Sept. 25, 2023) https://www.who.int/news-room/fact-sheets/detail/botulism (last visited Nov. 17, 2025).

[13] *Id.*

29.    WHO classifies botulism outbreaks as public health emergencies, emphasizing that early detection, immediate product recall, and rapid consumer notification are critical to preventing serious illness and fatalities.[14]

30.    Infant botulism occurs when infants under approximately one year ingest Clostridium botulinum spores, which germinate in the intestines and produce toxin a process distinct from foodborne botulism, which involves ingestion of pre-formed toxin. Infants are uniquely vulnerable due to immature gut flora.[15]

31.    Because of the heat-resistant nature of spores, standard food processing or storage may not eliminate them; rigorous controls (such as high temperature, low moisture, low water activity, adequate acidity, or other barriers) are necessary to prevent spore germination and toxin formation.[16]

32.    Despite this well-established scientific understanding, Defendant manufactured and distributed infant formula products that were contaminated, or at serious risk of being contaminated, with Clostridium botulinum. Defendant failed to take adequate measures to prevent such contamination and failed to warn consumers about the associated risks, directly leading to the injuries suffered by Plaintiffs and Class Members.

### III.    Defendant's Recall was insufficient

33.    Despite being aware of the potential contamination and the ongoing federal investigation, Defendant continued to manufacture, distribute, and market the Affected Products until the FDA and the CDC publicly intervened. Defendant's labeling and advertising represented the Affected Products as safe, nutritious, and "complete," while omitting any disclosure of the risk

---

[14] *Id.*

[15] *Clostridium botulinum & Botulism,* USDA (last updated Dec. 6, 2024) https://www.fsis.usda.gov/food-safety/foodborne-illness-and-disease/illnesses-and-pathogens/botulism (last visited Nov. 17, 2025).

[16] *Id.*

of Clostridium botulinum contamination. These omissions were material to reasonable consumers, particularly parents purchasing infant formula under the belief that it was sterile and medically safe for ingestion by newborns.

34.    On November 11, 2025, Defendant announced a nationwide recall of the Affected Products[17] after the FDA and CDC linked multiple cases of infant botulism to the consumption of the Affected Products. The recall, however, was structured in a manner that provided little meaningful relief to affected consumers. Purchasers seeking refunds could only obtain a refund for up to two cans of the Affected Products and only if they purchased directly on Defendant's website. No relief is offered for people who bought the Affected Products on third-party websites.[18]

35.    Defendant knew, or reasonably should have known, that this recall process would exclude the majority of purchasers. Infant formula is commonly purchased across multiple retailers, and consumers often do not retain receipts or the original packaging. By conditioning refunds on the location of the  purchase of the Affected Products, Defendant effectively denied financial redress to most impacted consumers. The recall, therefore, functioned primarily as a defensive public-relations measure rather than a genuine consumer-protection effort, leaving families uncompensated for both the health risks and financial losses they incurred.

36.    Defendant's advertising, recall statements, and omissions were deceptive, false, and misleading because they created the false impression that the Affected Products were safe for infant consumption when, in fact, it was contaminated or at serious risk of contamination with a potentially lethal bacterium. A reasonable consumer would not knowingly purchase or feed an

---

[17] *Outbreak Investigation of Infant Botulism: Infant Formula (November 2025)*, FDA (Nov. 11, 2025) (last visited Nov. 17, 2025).

[18] *An Update From Our Founders on Our Voluntary Recall*, BYHEART (Nov. 13, 2025), https://byheart.com/pages/an-update-from-our-founders-on-our-voluntary-recall-november-2025 (last visited Nov. 17, 2025).

infant a product carrying a risk of foodborne illness. Defendant's concealment of this material fact deprived consumers of the benefit of their bargain and rendered the Affected Products worthless or, at a minimum, worth substantially less than the amount paid.

37.    As a result of Defendant's misconduct, Plaintiffs and class members suffered economic injury by purchasing the Affected Products at a premium price based on false assurances of safety and quality. Defendant's inadequate recall and deceptive marketing practices violate state consumer protection laws, including but not limited to New York General Business Law §§ 349 and 350, California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.; California's Legal Remedies Act §§ 1750, et seq; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.; and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq; and constitute breaches of express and implied warranties regarding the safety, merchantability, and fitness of its products.

## CLASS ACTION ALLEGATIONS

38.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons who purchased one or more of Defendant's Affected Products that were contaminated, or at risk of contamination of Clostridium botulinum, in the United States for personal use from the beginning of any applicable limitations period through the date of class certification. (the "Nationwide Class").

39.    Plaintiffs Laney Linton and Rosemary Rockey, bring this action individually and on behalf of the following subclass:

> All persons residing in the State of California who purchased one or more of Defendant's Affected Products that were contaminated, or at risk of contamination, with Clostridium botulinum in the United States for personal use, from the beginning of any applicable limitations period through the date of class certification (the "California Subclass").

40.     Plaintiff Chloe Oliver, brings this action individually and on behalf of the following subclass:

> All persons residing in the Commonwealth of Pennsylvania who purchased one or more of Defendant's Affected Products that were contaminated, or at risk of contamination, with *Clostridium botulinum* in the United States for personal use, from the beginning of any applicable limitations period through the date of class certification (the "Pennsylvania Subclass").

41.     Plaintiff Thomas Andracchi II, brings this action individually and on behalf of the following subclass:

> All persons residing in the State of North Carolina who purchased one or more of Defendant's Affected Products that were contaminated, or at risk of contamination, with *Clostridium botulinum* in the United States for personal use, from the beginning of any applicable limitations period through the date of class certification (the "North Carolina Subclass").

42.     Excluded from the Class and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant's, subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and its current or former employees, officers, and directors; and (3) Plaintiffs' counsel and Defendant's counsel.

43.     Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

44.     Predominant Common Questions (Rule 23(a)(2)): The Classes claims present

common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, without limitation:

a.    Whether each Defendant knew or should have known that its Affected Products contained Clostridium botulinum that rendered its Affected Products unsafe for babies;

b.    Whether Defendant misleadingly represented and continues to represent that the Affected Products are safe for babies' consumption;

c.    Whether Defendant's representations, advertisements, warranties, labeling, packaging, and logos are false, deceptive, and/or misleading;

d.    Whether Defendant had knowledge that those representations were likely to deceive a reasonable consumer;

e.    Whether Defendant had knowledge that those representations were false, deceptive, and/or misleading;

f.    Whether Defendant continues to disseminate those false, misleading, and/or deceptive representations;

g.    Whether Defendant failed to warn and disclose material facts regarding the Affected Products and concealed internal testing results revealing dangerous levels of Clostridium botulinum that are unsafe for babies;

h.    Whether Defendant's testing showed that its products contained Clostridium botulinum;

i.    Whether Defendant violated the state consumer protection statutes alleged herein;

j.    Whether Defendant made negligent misrepresentations and/or omissions;

k.    Whether Defendant breached its express warranties;

l.      Whether Defendant breached its implied warranties;

m.     Whether Defendant was unjustly enriched; and

n.      The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

45.    Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased Defendant's Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

46.    Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class.

47.    Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delays, and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

48.    Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for

Defendant; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiffs and Nationwide Class)

49.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

50.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

51.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and other Class Members seek monetary damages against Defendant, enjoining Defendant from inaccurately describing, labeling, marketing, and promoting the Products.

52.     Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

53.     Defendant's improper consumer-oriented conduct — including failing to disclose that the Products have, or had the risk of having, Clostridium botulinum — is misleading in a material way in that it, inter alia, induced Plaintiffs and other Class Members to purchase Defendant's Affected Products and to use the Affected Products when they otherwise would not

have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

54.    Plaintiffs and other Class Members have been injured inasmuch as they purchased Affected Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiffs and the Class Members received less than what they bargained and paid for.

55.    Defendant's advertising and Affected Products' packaging and labeling induced Plaintiffs and other Class Members to buy Defendant's Affected Products.

56.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and other Class Members have been damaged thereby.

57.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and other Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, interest, and attorneys' fees and costs.

**COUNT II**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiffs and the Nationwide Class)**

58.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

a.    False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

60.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

a.    The term "false advertising," including labeling, of a commodity, or of the kind, character, terms, or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any

advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

61.    Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Affected Products inasmuch as it misrepresents that the Affected Products are safe for use and does not list that the Affected Products contain Clostridium botulinum.

62.    Plaintiffs and the other Class Members have been injured inasmuch as they saw the labeling, packaging, and advertising and purchased Affected Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiffs and other Class Members received less than what they bargained and paid for.

63.    Defendant's advertising, packaging, and Affected Products' labeling induced Plaintiffs and other Class Members to buy Defendant's Affected Products.

64.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

66.    Defendant made the material misrepresentations described in this Complaint in its advertising and on the Affected Products' packaging and labeling.

67.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers who purchased the Affected Products were and continue to be exposed to the Defendant's material misrepresentations.

68.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and other Class Members are entitled to monetary, statutory, compensatory, treble, and punitive damages, interest, and attorneys' fees and costs.

### COUNT III
### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE §§ 17500, ET SEQ.
### (On behalf of Plaintiffs and the California Subclass)

69.    Plaintiffs and the Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

70.    Defendant's conduct as alleged herein violates California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq., which makes it unlawful for a business to make, disseminate, or cause to be made or disseminated to the public "any statement, concerning…personal property…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

71.    The Affected Products at issue are "personal property" within the meaning of the FAL.

72.    The Affected Products' packaging omitted any warnings or disclosures regarding the potential contamination of the Affected Products, contrary to reasonable consumer expectations.

73.     Any express or implied representation, material omission of information, or failure to correct a past material misrepresentation or omission regarding the safety of the Affected Products is a "statement[] concerning personal property" within the meaning of the FAL.

74.     Defendant violated the FAL by making, disseminating, and causing to be made or disseminated to the public statements about the safety of the Affected Products that were "untrue or misleading" within the meaning of the FAL.

75.     Defendant failed to disclose accurate information regarding the Affected Products generally. Defendant made, disseminated, or caused to be made or disseminated untrue or misleading public statements about the Affected Products in numerous forums, including but not limited to Defendant's website. Defendant falsely stated that the Affected Products were safe for use, when in fact they omitted the known risk.

76.     Defendant knew, or by the exercise of reasonable care, should have known that each of those statements was untrue, misleading, and likely to deceive the public at or near the time it was made or disseminated, and at all times thereafter.

77.     Defendant's marketing material fails to disclose details of the Affected Products and that its advertising communicated falsehoods, including that consumers would be safe.

78.     As a result of Defendant's FAL violations and the harm caused thereby, Plaintiffs and Class members are entitled to and seek (a) injunctive relief to protect the consuming public by prohibiting Defendant from engaging in its past and ongoing acts, omissions, and conduct that violate the FAL; (b) restitution of the full value of all monies and other consideration that Plaintiffs and Class members paid Defendant for the purchase of the Affected Products, including any reduced value of Plaintiffs' and Class members' purchase, and disgorgement of the profits Defendant derived from its wrongful conduct; and (c) an award of reasonable attorneys' fees under Cal. Code Civ. Proc. § 1021.5.

**COUNT IV**
**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**
**CAL. BUS. & PROF. CODE §§ 1750, ET SEQ.**
**(On behalf of Plaintiffs and the California Subclass)**

79.     Plaintiffs repeat, re-allege, and incorporate each and every factual allegation contained in all previous paragraphs as if fully set forth herein.

80.     California's Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale or lease of goods. Cal. Civ. Code § 1770.

81.     The CLRA is to be liberally construed and applied to protect consumers against unfair and deceptive business practices. Cal. Civ. Code § 1760.

82.     Plaintiffs, and each California Subclass member, are "consumers," as defined in Cal. Civ. Code § 1761(d).

83.     The Affected Products are "goods," as defined in Cal. Civ. Code § 1761(a).

84.     Defendant is a "person" as defined in Cal. Civ. Code § 1761(c).

85.     Plaintiffs and each proposed Subclass member's purchase of Defendant's Affected Products constituted a "transaction" as defined in Cal. Civ. Code § 1761(e).

86.     Defendant's actions were unfair, unlawful, and deceptive under the CLRA. Defendant made false representations about the Affected Products. Defendant falsely represented that the Affected Products met specific safety standards, while the Affected Products did not meet these standards and did not contain the advertised safety. Cal. Civ. Code § 1770(a)(7).

87.     Defendant's actions were unfair, unlawful, and deceptive under the CLRA as Defendant advertised that the Affected Product would contain certain qualities but sold consumers the Affected Products that were different than what was advertised. Cal. Civ. Code § 1770(a)(9).

88.    Defendant's actions were unfair, unlawful, and deceptive under the CLRA, as Defendant promised that Plaintiffs and the California Subclass Members that the Affected Products were safe. Cal. Civ. Code § 1770(a)(7).

89.    Defendant's actions were unfair, unlawful, and deceptive under the CLRA as Defendant inserted untrue statements about safety on its website. Cal. Civ. Code § 1770(a)(14).

90.    Defendant represented that its Affected Products and services have certain characteristics, benefits, and qualities, which they do not have. In doing so, Defendant misrepresented and concealed material facts from Plaintiffs and the California Subclass. Defendant falsely advertised that its Affected Products had higher quality standards than those that were ultimately delivered. These misrepresentations and concealments deceived Plaintiffs and the California Subclass, depriving them of their legal rights and monies.

91.    Defendant's claim about its products has led and continues to lead consumers to reasonably believe that Defendant's Affected Products were safe.

92.    Plaintiffs and the California Subclass have suffered injury-in-fact as a result of and in reliance upon Defendant's false representations and have lost money as a result of Defendant's unfair and unlawful conduct. Plaintiffs and the California Subclass would not have bought Defendant's Affected Products, or would have paid significantly less for them, had they known that they would receive a product potentially contaminated with Clostridium botulinum.

93.    Defendant's actions as described herein were done with conscious disregard for Plaintiffs and the rights of California Subclass Members, and Defendant represented that the Affected Products or services have approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.

94.    Plaintiffs and California Subclass Members seek all monetary and nonmonetary relief allowed by law, including restitution, reasonable attorneys' fees and costs under California

Code of Civil Procedures § 1021.5, and injunctive relief under the CLRA pursuant to Cal. Civ. Code § 1782(d) and other appropriate equitable relief.

**COUNT V**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW 73 P.S. §§ 201-1, ET SEQ.**
**(On behalf of Plaintiffs and the Pennsylvania Subclass)**

95.     Plaintiffs and the Pennsylvania Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

96.     Defendant's conduct as alleged herein violates the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, et seq., which prohibits "[u]nfair methods of competition" and "unfair or deceptive acts or practices" in the conduct of trade or commerce.

97.     Defendant represented to Plaintiffs and Class members that its Affected Products were safe, sterile, and suitable for infant consumption. In truth, the Affected Products were contaminated, or at substantial risk of contamination, with Clostridium botulinum, a dangerous and potentially fatal bacterium known to cause infant botulism.

98.     Defendant's product labeling, advertising, and marketing omitted any disclosure of the contamination risk and instead conveyed false and misleading assurances of safety and quality. Defendant's misrepresentations and omissions were material to a reasonable consumer's purchasing decision and were intended to, and did, induce consumers to purchase the Affected Products at a premium price.

99.     Defendant knew, or through the exercise of reasonable care should have known, that its statements regarding the safety and suitability of the Affected Products were false and misleading at the time they were made, and that the omission of known contamination risks would likely deceive consumers.

100.    Plaintiffs and Class members reasonably relied upon Defendant's representations and omissions when purchasing the Affected Products. Had they known the true facts—that the formula was unsafe and under investigation for Clostridium botulinum contamination—they would not have purchased the products or would have paid significantly less for them.

101.    Defendant's actions constitute "unfair or deceptive acts or practices" under the UTPCPL, including but not limited to misrepresenting the characteristics, ingredients, standard, quality, and safety of its products, in violation of 73 P.S. § 201-2(4)(v), (vii), (ix), and (xxi).

102.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiffs and the Pennsylvania Subclass suffered ascertainable losses, including but not limited to monetary damages, emotional distress, and the diminished value or complete loss of their purchased products.

103.    Pursuant to 73 P.S. § 201-9.2, Plaintiffs and the Pennsylvania Subclass seek actual damages, treble damages, restitution, reasonable attorneys' fees, costs, and such further relief as the Court deems just and proper.

**COUNT VI**
**VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE**
**TRADE PRACTICES ACT N.C. Gen. Stat. §§ 75-1.1, ET SEQ.**
**(On behalf of Plaintiffs and the North Carolina Subclass)**

104.    Plaintiffs and the North Carolina Subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

105.    Plaintiffs bring this cause of action individually and on behalf of the North Carolina Subclass pursuant to the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §75-1.1, et seq., which prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

106.    Defendant engaged in unfair and deceptive acts or practices in violation of N.C. Gen. Stat. §75-1.1 by misrepresenting, concealing, and omitting material facts about the safety and

24

quality of its Affected Products. Specifically, Defendant falsely marketed the Affected Products as safe and nutritionally complete while failing to disclose that the Affected Products were, or were at significant risk of being, contaminated with Clostridium botulinum, a bacterium known to cause infant botulism.

107.    Defendant's omissions and misrepresentations were unfair, unethical, and unscrupulous business practices that were reasonably calculated to deceive consumers, including Plaintiffs and members of the North Carolina Subclass, into purchasing the Affected Products. Defendant's conduct occurred in and affected commerce within the meaning of the UDTPA.

108.    Defendant acted negligently, willfully, and/or recklessly with disregard for the rights and safety of consumers. Defendant knew or should have known through the exercise of reasonable care that its representations concerning the safety and purity of its Affected Profucts were false and misleading and that failing to disclose the contamination risk would likely mislead the consumer public.

109.    Plaintiffs and the North Carolina Subclass reasonably relied on Defendant's false and misleading statements and omissions when purchasing the Affected Products. Had they known that Defendant's Affected Product was unsafe and linked to potential Clostridium botulinum contamination, they would not have purchased it or would have paid significantly less.

110.    As a direct and proximate result of Defendant's deceptive and unfair acts and practices, Plaintiffs and the North Carolina Subclass have suffered ascertainable losses, including but not limited to monetary damages, emotional distress, and the diminished or lost value of their purchased Affected Products.

111.    Pursuant to N.C. Gen. Stat. §75-16, Plaintiffs and the North Carolina Subclass seek all available remedies, including actual damages, treble damages, injunctive relief, restitution, and recovery of reasonable attorneys' fees and costs.

## COUNT VII
## BREACH OF EXPRESS WARRANTY
### (On behalf of Plaintiffs and the Nationwide Class against Defendant)

112.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

113.    Defendant marketed and sold the Affected Products into the stream of commerce with the intent that the Affected Products would be purchased by Plaintiffs and the Nationwide Class.

114.    Defendant utilized false and deceptive product labels as well as advertising to promote, encourage, and urge the use, purchase, and utilization of the Affected Products by representing the quality and safety to parents and purchasers, Plaintiffs, and the public in such a way as to induce their purchase or use.

115.    For example, Defendant expressly warranted that its Affected Products were safe for consumption by babies in a misleading manner.

116.    Through these representations, Defendant made express warranties that the Affected Products would conform to the representations. More specifically, Defendant represented that the Affected Products, when ingested by babies and children in the manner foreseen by Defendant, were safe and effective, that these Affected Products were healthy and safe for consumption by babies.

117.    Defendant represented that the Affected Products only contained the ingredients disclosed on the label. These specific misrepresentations went beyond mere puffery as they were printed on the very product and in the product labeling.

118.    The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis

26

of the bargain, creating an express warranty that the goods shall conform to the affirmations of fact or promises.

119.   The Affected Products ingested by Plaintiffs' children did not conform to the representations made by Defendant, because the Affected Products contained toxic levels of Clostridium botulinum and ingredients not safe for human ingestion in the manner intended by Defendant, and contained ingredients not disclosed in the product labeling.

120.   Plaintiffs, by use of reasonable care, could not have discovered the breached warranty and realized the hidden increased risks and unreasonable dangers of allowing their children to ingest these Affected Products. Plaintiffs did not know of the presence of Clostridium botulinum until after the release of the U.S. Food & Drug Administration's Report on November 11, 2025.

121.   As a direct or proximate result of Defendant's conduct, Plaintiffs and the punitive Class have suffered actual damages in the purchase of the Affected Products that were worth significantly less than the price paid and because they would not have purchased the product had they known of the presence of Clostridium botulinum, entitling them to compensatory and equitable damages, attorneys' fees and costs and declaratory relief in an amount to be proven at trial. Further, Plaintiffs and the putative Class shall be entitled to an award of punitive damages, as is clear from the facts herein that Defendant's actions were performed with a realization of the imminence of danger and a reckless disregard and complete indifference to the probable consequences of its actions. By putting its own pecuniary interests ahead of all else, Defendant sacrificed the safety, health, and well-being of innocent babies, toddlers, and children, and unfairly profited off unsuspecting parents and purchasers who believed they were buying healthy food safe for consumption by babies and children. The only way to prevent this type of egregious indifference again is to assess punitive damages against Defendant.

## COUNT VIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On behalf of Plaintiffs and the Nationwide class against Defendant)

122.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

123.    At all relevant times, Defendant was a merchant who dealt in goods of that kind, and in fact, boasted about its processes in the production of safe and healthy baby food.

124.    The Affected Products at issue were not reasonably fit for the ordinary purposes for which such goods are used and did not meet the expectations for the performance of the Affected Product when used in the customary, usual, and reasonably foreseeable manner. Nor were these Affected Products minimally safe for their expected purpose.

125.    Unbeknownst to them at the time the Plaintiffs purchased these Affected Products, they contained toxic levels of Clostridium botulinum.

126.     Plaintiffs did not know of the presence of the Clostridium botulinum until after the release of the U.S. Food & Drug Administration's Report on November 11, 2025.

127.    The Affected Products at issue, even if they served their purpose in serving as food and sustenance for babies and children, cannot create a benefit of the bargain because the Clostridium botulinum and its dangerous effects were never bargained for.

128.    Because of the presence of Clostridium botulinum, the Affected Products do create a present economic injury to Plaintiffs and the putative class because their sale should never have occurred.

129.    As a direct or proximate result of Defendant's conduct, Plaintiffs and the putative Class have suffered actual damages in the purchase of Affected Products that were worth significantly less than the price paid and because they would not have purchased the Affected Product had they known of the presence of Clostridium botulinum, entitling them to compensatory

and equitable damages, attorneys' fees and costs and declaratory relief in an amount to be proven at trial.

130.    Further, Plaintiffs and the putative Class shall be entitled to an award of punitive damages, as is clear from the facts herein that Defendant's actions were performed with a realization of the imminence of danger and a reckless disregard and complete indifference to the probable consequences of its actions. By Defendant's putting its own pecuniary interests ahead of all else, it sacrificed the safety, health, and well-being of innocent babies, toddlers, and children, and unfairly profited off unsuspecting parents and purchasers who believed they were buying healthy food for their babies and children. The only way to prevent this type of egregious indifference again is to assess punitive damages against Defendant.

**COUNT IX**
**NEGLIGENT MISREPRESENTATION**
**(On behalf of Plaintiffs and the Nationwide Class against Defendant)**

131.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

132.    Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Affected Products.

133.    Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling the Affected Products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Affected Products containing Clostridium botulinum from the marketplace or to take other appropriate remedial action.

134.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the Affected Products were not as advertised or suitable for the intended use (consumption by babies) and were otherwise not as warranted and represented by Defendant.

135.    Specifically, Defendant knew or should have known that: (1) its Affected Products at issue were not healthy, or safe for consumption because they contained or had a risk of containing Clostridium botulinum; (2) the Affected Products were adulterated or at risk of being adulterated by Clostridium botulinum; and (3) the Affected Products were otherwise not as warranted and represented by Defendant.

136.    Plaintiffs and the Class justifiably and reasonably relied on Defendant's representations as to the ingredients, qualities, and characteristics of the Affected Products.

137.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased the Affected Products that are worth less than the price they paid and that they would not have purchased at all, had they known of the presence or risk of Clostridium botulinum that do not conform to the Affected Products' labels, packaging, advertising, and statements.

138.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT X**
**UNJUST ENRICHMENT**
**(On behalf of the Plaintiffs and the Nationwide Class against Defendant)**

139.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

140.    Plaintiffs and Class members conferred benefits upon Defendant. Plaintiffs and Class members paid money for Defendant's Affected Products containing Clostridium botulinum that were unsafe and not suitable for babies.

Defendant has unjustly retained the benefits conferred upon by Plaintiffs and Class members. Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products contain harmful Clostridium botulinum that render Defendant's Affected Products unsafe and unsuitable for consumption by babies. If Plaintiffs and Class members had known the true nature of Defendant's Affected Products, they would not have paid money for them or would have paid less. Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

a.      Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class, and designating Plaintiffs' counsel as Class Counsel;

b.      Awarding Plaintiffs and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

c.      Awarding Plaintiffs and the Classes appropriate relief, including but not limited to actual damages;

d.      For declaratory and equitable relief, including restitution and disgorgement;

e.      For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

f.      Awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

g.    Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

h.    Awarding pre-judgment and post-judgment interest;

i.    For punitive damages; and

j.    Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: November 17, 2025

LEVI & KORSINSKY, LLP

By: s/ *Mark S. Reich*
Mark S. Reich (MR-4166)
Michael Pollack (6173272)
33 Whitehall St., 27th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

*Counsel for Plaintiffs*